UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSIE BARRINGER,

Plaintiff,

vs.   Civil Action No. 18-CV-11174
HON. BERNARD A. FRIEDMAN,
 *presiding*
**Electronically Filed**

KRISTIN WHITWORTH,
BRENDA CARLSON, and
JANETTE PARKER,

Defendants.

\* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION FOR INJUNCTION AND/OR PROTECTIVE ORDER TO RETURN PROPERTY**

As this Court is well aware, in early 2018 Plaintiff, Jessie Barringer (Mr. Barringer), entrusted Defendant Whitworth with the care of his pregnant dog, a registered Chinese Crested dog named GCHB CH KENWORTH STRIKE A POSE AKC #TS22939604, known informally as Vogue ("Vogue"). Certificate of Ownership, American Kennel Club (Exhibit 1).

> Defendant Whitworth agreed to care for Vogue and her anticipated litter of puppies for a short period of time. While in Whitworth's care, Vogue had three puppies. When plaintiff did not retrieve Vogue and the puppies by the agreed upon date, Whitworth notified plaintiff that she

1

> had placed them with Kalamazoo County Animal Services (AKCAS@). The next day, at plaintiff's request, defendant Carlson retrieved the dogs from KCAS and agreed to care for them until plaintiff could pick them up in approximately one week's time. Before plaintiff did so, Carlson delivered the dogs to defendant Parker, who allegedly refused to return them to plaintiff and instead delivered them to an animal shelter in Canada. Additionally, Parker and Carlson defamed plaintiff on social media. In approximately mid-May, one month after filing the complaint, Plaintiff succeeded in retrieving Vogue and two of the puppies from the Canadian shelter.

Corrected Opinion and Order Granting in Part and Denying in Part Plaintiff's Motion for Default Judgment and/or Summary Judgment, ECF 68, at 1-2. The case proceeded on the issue of damages.

On February 4, 2019, Plaintiff's first counsel filed his Motion to Withdraw (ECF 79). This Order was granted on February 22, 2019 (ECF 82). The Court granted Mr. Barringer thirty days to engage the services of new counsel. *Id.* Mr. Barringer was at that time unable to do so.

This Court dismissed this case and entered judgment on the remaining issues in favor of the Defendants on July 18, 2019 (ECF 83, 84).

On December 6, 2020, Mr. Barringer entrusted Vogue and three other dogs to Lori Hooper, an animal transporter from Texas, to transport "Gucci" to Missouri, the two dogs "Maddie" and "Gizmo" to Lucinda K. Blenis, (aka Luci Helrekkr, aka [parabellumgirl@gmail.com](mailto:parabellumgirl@gmail.com); (phone: xxx-xxx-5570) a buyer in Pennsylvania.

Vogue was to be transported on to Chattanooga, Tennessee to Linda Bowers for the purpose of breeding, then returned to Plaintiff in California. Gucci arrived timely in Missouri, but Vogue and "Maddie" were flip-flopped and Vogue and Gizmo went to Blenis rather than "Maddie" and "Gizmo."

In communicating with the buyer, Plaintiff discovered that the transporter had erroneously left the dog Vogue with the buyer rather than the dog "Maddie." The two texted and compared photographs. Plaintiff immediately demanded exchange of the dog "Maddie" for the dog Vogue.

Shortly thereafter, Lucinda Blenis, the buyer, notified Plaintiff that Defendant, Janette Parker, had claimed the dog Vogue and had presented a document to her (who is a local constable in Pennsylvania), purporting to be a Judgment of this Court, complete with information mimicking the "burn-in" information native to the Court's Electronic Case Filing (ECF) system, granting Judgment to Defendants and awarding the dog Vogue to Defendant Parker (Exhibit 2).

In response to an inquiry from Kikn Bah, another owner in the community of owners of Chinese Crested dogs, the buyer sent a photograph of the purported judgment and a text message. Lucinda Blenis subsequently forwarded an undated screenshot of the text message to Mr. Barringer. It reads: "I am a law enforcement officer. I was presented with a court order by Janette Parker, and I had to abide by it. I do not have a choice in the matter. The dog has been returned to Janette. She is

3

the rightful owner. If Jessie wants to speak to anyone, he should start with her." (Exhibit 2)

Plaintiff immediately contacted the Court and forwarded the purported judgment and the screenshot to the Court's chambers. This Court immediately ordered that a hearing be held on whether Defendant Parker should be held in contempt (ECF 85). The Court also saw fit to appoint counsel for Defendant Parker from the Federal Defender's office, since the alleged conduct appears to constitute criminal activity, the forgery of a court document.

Vogue remains in the custody and control of Defendant Parker. She is, however, the property of Mr. Barringer. Moreover, in view of the apparent willingness of Defendant Parker to engage in criminal activity to gain possession and control of the dog Vogue, it is apparent that the dog is not safe or within the Court's control if she is with Defendant Parker. Plaintiff asks that this Court protect the evidence in this case and correct the unlawful action undertaken by Defendant Palmer by entering an Order forthwith returning the care, custody, and control of the dog Vogue to Plaintiff pending the outcome of this matter.

## ARGUMENT

### Introduction

The intensity with which all parties crave and even love the breed of Chinese Crested dogs is, to most people, regarded as almost comic (*e.g.,* Best in Show,

4

(2000)). However, here, Defendant Parker has pursued and unlawfully gained possession of Plaintiff Jessie Barringer's property, Vogue, not only once but twice in a manner which in its lawlessness and dogged determination is more reminiscent of the characters in John Wick, (2014).

Whether comic or nefarious, however, the Defendant has wrongfully taken possession of the Plaintiff's property by wrongfully claiming the authority of this Court to do so and formulating a document purporting to be a Judgment that this Court never issued. Plaintiff submits that this Court can and must act.

There are two vehicles under which the Court may assert jurisdiction over the property, Vogue the dog: via injunctive relief and/or via a protective order.

### A. Injunctive Relief

In deciding whether injunctive relief is warranted, courts in this Circuit consider four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued, (3) whether the issuance of an injunction would cause substantial harm to others, and (4) whether the public interest would be served by issuing the injunction. *Oversight v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 572 (6th Cir. 2002). Decisions regarding temporary restraining orders are within the discretion of a district court. *See, e.g., NE Ohio Coal.For Homeless Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F3d 999, 1009 (6th Cir. 2006). The

four factors are not prerequisites that must be met but are interrelated concerns that must be balanced together. *Id.*

First, Mr. Barringer has a strong likelihood of success on the merits. He is a record owner for Vogue, and her principal trainer and caregiver. Despite Defendant's concocting a false order of judgment to gain possession of Vogue, Plaintiff is the true owner and, eventually, this Court will likely rule that that is the case and return the dog to him as his property.

Second, Mr. Barringer will suffer irreparable harm if Vogue is not returned to him. Plaintiff has already had to file both state and federal suits to regain possession of Vogue (and previously her puppies, one of which was never recovered) from Defendant Parker. Defendant Parker has previously threatened publicly to spay Vogue, apparently, as a spiteful act towards Plaintiff. Vogue is a valuable show dog. Plaintiff, and Vogue's other owners, have expended significant sums of money to promote Vogue and to secure her standing as a champion show dog. Plaintiff anticipates, as a result of these efforts, that he will be able to sell breeding rights to Vogue for future litters of puppies. If Parker spays Vogue, Plaintiff will suffer irreparable harm to his valuable interest in Vogue's future litters of puppies. The remedy at law may prove inadequate. Plaintiff estimates that he may be able to sell the remaining litters of Vogue's puppies for as much as $135,000.

Moreover, Plaintiff will suffer significant, irreparable harm if he is forced to wait until the conclusion of this litigation to reclaim Vogue. Vogue's showing and breeding years have already been significantly interfered with by Defendant Parker's previous attempt to claim ownership and exercise control over Vogue. Now she has demonstrated that she will commit criminal activity to regain control over Vogue.

Vogue is a true champion purebred. Plaintiff has invested significant monies in promoting Vogue and training her. He, as a trainer and handler, derives significant recognition in the professional dog showing world from being able to compete with Vogue. Vogue is already over two years older since this larcenous interference with Plaintiff's dog began. If she is not shown during that time, her training will dull and she will be less competitive as a show dog. Further, her age will play a factor. She is, right now, at a prime show age. She has already lost time in the show ring, dulling her training, and Plaintiff fears that her value may decrease.

Plaintiff derives not only dollars and cents from showing and competing Vogue, but also professional recognition and personal satisfaction. Further, Vogue is within optimal breeding years at present. When this litigation concludes, she will not be. Plaintiff needs Vogue back now, so that he may continue to compete with her and to derive value from breeding her. Plaintiff's ability to show and compete with this dog will provide him not only money, but also professional standing and advancement of his career. Damages would never have been sufficient to

compensate for the losses he will suffer if he does not have his animal back, and they will not now.

Third, there will be no substantial harm to others if this injunction issues. Plaintiff is the rightful owner of Vogue. The only person who stands to be "harmed" by the issuance of this injunction is Defendant Parker. Her seeking yet again to claim ownership of Vogue, now via an apparent forged court judgment, is simply incomprehensible. It appears to Plaintiff that the sooner Defendant Parker surrenders the dog Vogue to her rightful owner, the better off Defendant will be in the eyes of the law.

Finally, the public interest would be helped by the issuance of this injunction. The public has a right to expect that documents tendered and purported to be Court orders or judgments are in fact Court orders or judgments. It is not for Plaintiff to tell the Court how best to address the false order and false pretenses under which Defendant Parker essentially stole Plaintiff's dog. However, it is only just that the Court return Plaintiff's dog to him pending the outcome of that issue, since there is no question that Defendant Parker obtained the dog using a purported Judgment that this court never issued. Plaintiff has a right to reclaim his property. Defendant Parker is retaining it wrongfully.

### B. Protective Order

Plaintiff, Mr. Barringer, believes in good faith that there is no question that Vogue is his (and his co-owners') dog and that Defendant Parker has possession and control of her wrongfully. However, in the event that this Court believes that discovery is appropriate on any issue regarding the identity or lawful ownership of Vogue, this Court has the power to fashion a protective order pursuant to Fed. R. Civ. P. 26(c), requiring the parties to refrain from interference with any identifying aspects of the dog Vogue or of her paperwork, and designating where the dog will be housed pending the outcome of this Motion.

Plaintiff stands ready to submit to this Court's jurisdiction, to house the dog Vogue and to abide by any of the Court's Orders regarding grooming, paperwork, attempts to install an identification chip, or anything else touching on the Court's ability to do justice in this unfortunate situation.

Plaintiff thus asks that this Court enter a Protective Order that no party shall interfere with the customary appearance, electronic identification, organizational registrations, or veterinary records of the dog Vogue pending the outcome of the Motion and that the dog Vogue be returned forthwith to Plaintiff under such conditions as the Court may require pending that outcome.

## **CONCLUSION**

For the reasons stated herein, Plaintiff requests that this Honorable Court GRANT him a preliminary injunction that:

1. Enjoins Defendant Parker from holding herself out as the owner of the dog known as GCHB CH KENWORTH STRIKE A POSE AKC #TS22939604, informally known as Vogue.

2. Orders Defendant Parker and any of her officers, agents, servants, employees, and attorneys who may be in possession or control of Vogue to return her immediately to Plaintiff or his counsel at a date, time, and location of the Court's choosing.

3. Enjoins Defendant Parker and forbids her, either in her own right, or via any of her officers, agents, servants, employees, and attorneys, from spaying or causing Vogue to be spayed, neutered, chipped, or otherwise physically altered, AND

4. Finds that Mr. Barringer is the rightful owner of the dog known as GCHB CH KENWORTH STRIKE A POSE AKC #TS22939604, informally known as Vogue.

Respectfully submitted,

/s/ Timothy Denison
TIMOTHY DENISON
235 South Fifth Street
The Third Floor
Louisville, Kentucky 40202-3226
(502) 589-6916; (FAX) 568-6919
timothydenison@aol.com
**Counsel for Plaintiff**

**CERTIFICATE OF SERVICE**

10

   I hereby certify that on February 9, 2021, the foregoing was electronically filed with the Clerk of the Court using CM/ECF, which will send notice of electronic filing to the registered counsel.

               <u>/s/Timothy Denison</u>